IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

JAMES ALDRIDGE                                                         PLAINTIFF

v.                                          CIVIL ACTION NO. 1:20-cv-321 HTW-MTP

HAROLD (TED) CAIN,
JULIE P. CAIN,
HTC ENTERPRISES, LLC
HTC ELITE, L.P.,
EVAN TRACE CAIN GST TRUST,
LOGAN  PATRICK  CAIN  GST  TRUST AND
LUCINDA K. SLOAN                                                      DEFENDANTS

## ORDER

Before the Court is a motion [doc. no. 23] brought by four of the Defendants herein,

namely: Harold (Ted) Cain; Julie P. Cain; HTC Enterprises, LLC; and HTC Elite L.P., asking

this court to dismiss this action pursuant to Rule 12(b)(1)[1] and 12(b)(6)[2] of the Federal Rules of

Civil Procedure, contending that Plaintiff lacks standing to bring this litigation, and for

Plaintiff's failure to state a claim upon which relief may be granted.  The remaining Defendants,

---

[1] **Rule 12(b) How to Present Defenses**. Every defense to a claim for relief in any pleading must be
asserted in the responsive pleading if one is required. But a party may assert the following defenses by
motion;
(1) lack of subject-matter jurisdiction;
(2) lack of personal jurisdiction;
(3) improper venue;
(4) insufficient process;
(5) insufficient service of process;
(6) failure to state a claim upon which relief may be granted: and
(7) failure to join a party under Rule 19.
A motion asserting any of these defenses must be made before pleading if a responsive pleading is
allowed.  If a pleading sets out  claim for relief that does not require a responsive pleading, an opposing
party may assert at trial any defense to that claim.  No defense or objection is waived by joining it with
one or more other defenses or objections in a responsive pleading or in a motion.
Fed. R. Civ. P. 12(b)

[2] See footnote 1.

the Evan Trace Cain GST Trust, the Logan Patrick Cain GST Trust and Lucinda K. Sloan, have

filed a joinder to this motion and adopt the same arguments.  The Plaintiff here, James Aldridge

("Aldridge" or "Relator"), opposes the motion, arguing that he has standing to bring this lawsuit

and, thus, dismissal is not appropriate.  Briefing has been completed and the court now makes its

ruling.

## JURISDICTION AND VENUE

Subject matter jurisdiction of this court arises out of 28 U.S.C. §1331,[3] as a federal

question is presented by Plaintiff's claims under 28 U.S.C. §3304(b),[4] a federal statute.  Section

---

[3]  § 1331. Federal Question
  The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.
28 U.S.C. §1331

[4] § 3304. Transfer fraudulent as to a debt to the United States
 (a). . .
 (b) Transfers without regard to date of judgment.--(1) Except as provided in section 3307, a transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States, whether such debt arises before or after the transfer is made or the obligation is incurred, if the debtor makes the transfer or incurs the obligation--
    (A) with actual intent to hinder, delay, or defraud a creditor; or
    (B) without receiving a reasonably equivalent value in exchange for the transfer or obligation if the debtor--
       (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
       (ii) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.
  (2) In determining actual intent under paragraph (1), consideration may be given, among other factors, to whether--
    (A) the transfer or obligation was to an insider;
    (B) the debtor retained possession or control of the property transferred after the transfer;
    (C) the transfer or obligation was disclosed or concealed;
    (D) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
    (E) the transfer was of substantially all the debtor's assets;
    (F) the debtor absconded;
    (G) the debtor removed or concealed assets;
    (H) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
    (I) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

3304(b) is a part of the Fraudulent Transfer Act.  It provides that a transfer is fraudulent if such transfer is made by a debtor of the United States with the intent to hinder, delay or defraud a creditor; or if the debtor did not receive a reasonably equivalent value in exchange for the transfer and the remaining assets of the debtor were unreasonably small in relation to the transaction; or if the debtor did not receive a reasonably equivalent value in exchange for the transfer and the debtor incurred or reasonably believed he would incur, debts beyond his ability to pay as they became due.

Subject matter jurisdiction is also present here based on diversity of citizenship as provided by 28 U.S.C. §1332.[5]  Plaintiff  Aldridge is a citizen of the State of Alabama.  The Defendants are citizens of the State of Mississippi.  The amount in controversy on the face of the Complaint exceeds $32,000,000, an amount well in excess of the $75,000 jurisdictional amount, exclusive of interest and costs.

Plaintiff also brings claims under Mississippi state law in accordance with Miss. Code Ann. § 15-3-107,[6]  the State's version of the Uniform Fraudulent Transfers Act.  Much like its

---

(J) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
(K) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.
28 U.S.C. § 3304(b)

[5] **§ 1332  Diversity of citizenship; amount in controversy; costs**
The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—
    (1)  citizens of different States; . . .
28 U.S.C. § 1332

[6] **§ 15-3-107. Fraudulent transfers and obligations; intent; presumptions**
(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay or defraud any creditor of the debtor.
(2) In determining actual intent under subsection (1), consideration may be given, among other factors, to whether:
    (a) The transfer or obligation was to an insider;
    (b) The debtor retained possession or control of the property transferred after the transfer;
    (c) The transfer or obligation was disclosed or concealed;

federal counterpart, this statute also provides that a transfer made by a debtor is fraudulent if the debtor made the transfer with actual intent to hinder, delay or defraud a creditor of the debtor. Unlike the federal act, the state law applies to any creditor, and not just to the United States.

Venue is appropriate in this, the Southern District of Mississippi, as the underlying judgment under the False Claims Act was obtained in this district and the allegedly fraudulent transfers were made or attempted in this district.

---

(d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(e) The transfer was of substantially all the debtor's assets;

(f) The debtor absconded;

(g) The debtor removed or concealed assets;

(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(j) The transfer occurred shortly before or shortly after a substantial debt was incurred;

(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor;

(l) The debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

    (i) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

    (ii) Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due;

(m) A transfer made or obligation incurred by a debtor may be fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation; and

(n) A transfer made by a debtor may be fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

(3) If there exists a combination of facts such as described in subsection (2)*(1)*, (m) or (n) only, then there will be a strong presumption of fraud which can be rebutted only by clear and convincing evidence. Miss. Code. Ann. § 15-3-107

## LEGAL STANDARD

*Fed. R. Civ. P. 12(b)(6)*

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts the plaintiff's factual allegations as true and makes reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To proceed, the complaint "must contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 677-78 (quotation marks and citation omitted). This requires "more than an unadorned, the defendant-unlawfully-harmed-me accusation," but the complaint need not have "detailed factual allegations." *Id.* at 678 (quotation marks and citation omitted). Plaintiff's claims must also be plausible on their face, which means there is "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

*Fed. R. Civ. P. 12(b)(1)*

A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Assn. of Miss., Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir.1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* A pleading stating a claim for relief must contain "a short and plain statement of the grounds for the court's jurisdiction[.]" Fed. R. Civ. P. 8(a)(1). *Celestine v. TransWood, Inc., 467 F. App'x 317, 318 (5th Cir. 2012).* See *New Orleans & Gulf Coast Ry. Co. v. Barrois,* 533 F.3d 321, 327 (5th Cir. 2008)("the party seeking to assert federal

jurisdiction has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists").

## FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit is brought by James Aldridge, who was the Relator in a *qui tam*[7] case brought pursuant to the False Claims Act ("FCA"),[8] 31 U.S.C. § 3729 *et seq.* The FCA is a federal enactment that provides for enforcement by means of a *qui tam* action. The False Claims Act, as the name implies, imposes civil liability upon any person who, *inter alia*, "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to an officer or employee of the United States Government ... 31 U.S.C. § 3729(a). An FCA action may be commenced (1) by the Government itself, or (2) by a private person (the Relator) "for the person and for the United States Government" against the alleged false claimant, in the name of

---

[7] Generally, a *qui tam* action is one in which a private party brings suit in the name of the United States and shares in the proceeds. *Austin v. United States,* 509 U.S. 602, 607 n. 3, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993); see also *Riley v. St. Luke's Episcopal Hospital,* 252 F.3d 749, 751–58 (5th Cir.2001) (en banc)*. "Qui tam"* is the abbreviated version of the phrase *"qui tam pro domino rege quam pro se ipso in hac parte sequitur"* which, literally translated, means he "who sues on behalf of the King as well as for himself." Black's Law Dictionary 1262 (7th ed.1999). The private plaintiff suing on behalf of the government in a *qui tam* action is known as the "relator." See *id. at 1292.* See also *Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 768 n. 1, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000).*

[8] "The False Claims Act was enacted by Congress to combat fraud against the federal government. It provides that a person who knowingly presents to the United States a false claim for payment, or who otherwise conspires to defraud the United States by obtaining payment of a false claim, is liable to the government for treble damages in addition to a civil monetary penalty. See 31 U.S.C. § 3729(a). A civil enforcement action under the False Claims Act may be brought either by the Attorney General or by "[a] person ... for the person and the United States Government." 31 U.S.C. § 3730(b). . . . and the private plaintiff is referred to as the "relator." As an incentive, private individuals who prosecute meritorious *qui tam* actions are entitled to a percentage of the proceeds of a judgment or settlement award, in addition to reasonable expenses, attorney's fees, and costs. See 31 U.S.C. § 2730(d). When a *qui tam* action is filed, the United States may take over prosecution of the case within the time limits prescribed by 31 U.S.C. § 3730(b). If the United States declines to prosecute the case, then the relators may proceed with the action exclusively. See *id."*
*In re Schimmels,* 127 F.3d 875, 877 (9th Cir. 1997).

the Government. § 3730(b)(1).[9] See *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens,* 529

U.S. 765, 769 (2000).

     Aldridge, the Plaintiff here, filed such a *qui tam* action under the FCA against Harold T.

("Ted") Cain (hereafter "Ted Cain"); Julie Cain; two of Ted Cain's businesses (Stone County

Hospital and Corporate Management, Inc.); and two other individual officers of one of the

companies, alleging that they had committed Medicare Fraud.  See *United States ex rel. Aldridge*

*v. Corporate Management, Inc., et al,* 1:16-CV-369  HTW-LGI ("hereafter referred to as

"*Aldridge v. CMI*").   Ted Cain was the owner of numerous health related businesses, as well as

having ownership in several non-health related businesses in South Mississippi.  At the time of

the aforenamed lawsuit, Ted Cain was the sole owner of Stone County Hospital in Wiggins,

---

[9]

**§3730 Civil Actions for False Claims**
(b) ACTIONS BY PRIVATE PERSONS.--
    (1) A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government. The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.
    (2) A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure. The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders. The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.
    (3) The Government may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal under paragraph (2). Any such motions may be supported by affidavits or other submissions in camera. The defendant shall not be required to respond to any complaint filed under this section until 20 days after the complaint is unsealed and served upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure.
    (4) Before the expiration of the 60-day period or any extensions obtained under paragraph (3), the Government shall--
      (A) proceed with the action, in which case the action shall be conducted by the Government; or
      (B) notify the court that it declines to take over the action, in which case the person bringing the
      action shall have the right to conduct the action.
    (5) When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action.
Title 31 U.S.C. §3730.

Mississippi, a Critical Access Hospital.[10]  His wife, Julie Cain, at various periods, was the hospital administrator for Stone County Hospital, a paid consultant for the hospital, or a paid member of its board of directors.  Corporate Management, Inc., ("CMI") was a management company owned by Ted Cain that provided administrative services to his health provider entities and some of his other businesses.

Aldridge filed this *qui tam* lawsuit in 2007, under the provisions of §3730(b) of the FCA, on behalf of himself and the United States Government, alleging that Ted Cain; Julie Cain; Stone County Hospital; Corporate Management, Inc.; Thomas Kuluz (Chief Financial Officer for CMI); and Starann Lamier (Chief Operations Officer for CMI),  had defrauded the Medicare program, a program of the United States Government.  Qui tam lawsuits are empowered by the provisions of  § 3730(b) of the FCA.   That section provides as follows:

> (b) Actions by private persons.--(1) A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government. The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.

31 U.S.C. § 3730(b).

After a period of investigation, the United States intervened in the lawsuit in 2015, as provided for in Subsections (b)(2)and (b)(3) of §3730 of the FCA, which provide as follows:

> (2) . . . The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders. The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.

---

[10]  "Critical Access Hospital" is a designation given to eligible rural hospitals by the Centers for Medicare and Medicaid Services. The "Critical Access Hospital" designation and method of reimbursement is designed to reduce the financial vulnerability of rural hospitals, thereby improving access to healthcare in rural communities.  These hospitals, therefore, receive certain benefits, such as cost-based reimbursement for Medicare services.  Medicare reimburses Critical Access Hospitals for all allowable costs under Medicare, plus 1%, an advantage over other types of hospitals

> (3) The Government may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal under paragraph (2). Any such motions may be supported by affidavits or other submissions in camera. . . .

31 U.S.C. § 3730(b)(2) - (b)(3) .

This qui tam case was tried before a twelve-person jury beginning in January of 2020.  At the end of the trial and after a verdict, this court entered a final judgment in May of 2020. Attorneys for the United States primarily conducted the litigation, as provided for in the FCA. The attorney for the Relator, however, was also an active participant in the trial, examining and cross-examining witnesses, arguing motions and evidentiary matters, in accordance with §3730(c)(1) of the FCA, which states:

> **(c) Rights of the parties to qui tam actions.--(1)** If the Government proceeds with the action, it shall have the primary responsibility for prosecuting the action, and shall not be bound by an act of the person bringing the action. Such person shall have the right to continue as a party to the action, subject to the limitations set forth in paragraph (2).

31 U.S.C. §3730(c)(1)

As provided for in the above section, the Relator in the *Aldridge v. CMI* case, continued "as a party to the action."

The duly constituted jury which heard testimony over a time period of eight-and-a-half weeks, and deliberated for 8 days, found all of the Defendants, with the exception of Starann Lamier, liable for knowingly submitting, or causing to be submitted, false claims for the purpose of obtaining Medicare payments.  Some defendants were additionally found liable for unjust enrichment and 'payment based on mistake of fact.'[11] *United States ex rel. Aldridge v. Corporate Management, Inc., et al,* 1:16-CV-369  HTW-LGI (S.D. Miss. 2020). The jury's verdict was for

---

[11] That judgment is currently on appeal before the United States Court of Appeals for the Fifth Circuit in No. 21-60568.

$10,855,382.00, but because of the trebling factor and civil penalties[12] that verdict now stands at over $32 million dollars[13] for the United States and against the Defendants, jointly and severally, including Ted Cain and Julie Cain, two of the Defendants in the case *sub judice*.

During the trial of this cause, the government informed the court that Ted Cain and Julie Cain had transferred most, if not all, of their major assets into family trusts within the year preceding the trial.  The purpose of the trusts, Ted Cain admitted, was to protect the assets from creditors.  Ted Cain and Julie Cain currently acknowledge in their brief that they retain control over the trusts. Ted Cain also acknowledged his control over the trusts during the trial of *Aldridge v. Corporate Management, Inc.*  Aldridge alleges that the transfers of over thirty Cain-owned businesses into these trusts were fraudulent and that these transfers would impede his ability to collect on the judgment obtained in the *Aldridge v. CMI* litigation.

A successful Relator in an FCA action is entitled to a percentage of the recovery.  Where the Government intervenes in the action, that individual "shall … receive at least 15 percent but not more than 25 percent of the proceeds of the action.. . . depending upon the extent to which the person substantially contributed to the prosecution of the action." 31 U.S.C. § 3730(d).  (If the Government does not intervene in the lawsuit and the Relator successfully prosecutes the action, the Relator is entitled to a higher percentage of the recovery).  The statute continues: "Any such person shall also receive an amount for reasonable expenses which the

---

[12] Any person found liable for violations of  the FCA, "is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-4101), *plus 3 times the amount of damages* which the Government sustains because of the act of that person."
31 U.S.C. § 3729
[13] Tripling the damages as required by 31 U.S.C. §3729 and the addition of $71,681 in civil penalties brought the total award to $32,537,827.  The parties, though, entered a joint stipulation reducing damages against Ted Cain, Tommy Kuluz and Corporate management, Inc., under the "Medicaid Self-Disallowances Category" from  $381,866 to  $133,943.59 (for 2012 = $84,359.44 and for 2013 = $49,584.15), a reduction of $247,923, bringing the total award to $32,289,904.

court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs." 31 U.S.C. § 3730(d).  These expenses, fees, and costs are to be awarded against the defendant. *Id*.

As stated, the government intervened in the FCA lawsuit against Ted Cain, Julie Cain and others in the *Aldridge v. CMI* lawsuit, and took primary responsibility for conducting that litigation.  As a successful Relator in that case, Aldridge is entitled, under the FCA, to receive at least fifteen percent of the proceeds from that final judgment, which amounts to at least $4 million dollars.  He is additionally entitled to attorneys' fees and costs from Ted Cain, Julie Cain, and the other defendants.

Aldridge has filed the current lawsuit to protect his interest in collecting on the judgment in the *Aldridge v. CMI*  case, particularly as it relates to Ted Cain, Julie Cain, Stone County Hospital and CMI -- all Defendants in the FCA case.  He contends that the transfers, within months of commencement of the FCA trial, of most of the assets of the judgement debtors into the trusts at issue in this case were fraudulent and made in violation of  the federal Fraudulent Transfer Act 28 U.S.C. §3304(b) and the Mississippi Uniform Fraudulent Transfer Act, Miss. Code Ann. § 15-3-107 *et seq*.

## ANALYSIS

Defendants, the movants here, contend that Aldridge does not have standing to bring this lawsuit and ask this court to dismiss this case.

Article III of the United States Constitution limits the jurisdiction of federal courts to actual "cases" and "controversies."  U.S. CONST., art. III, § 2. [14] See e.g., *Crane v. Johnson*, 783

---

[14] **Section 2.** The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority;--to all Cases affecting Ambassadors, other public Ministers and Consuls;--to all Cases of admiralty and maritime Jurisdiction;--to Controversies to which the United States shall be a Party;--to Controversies between two or more States;--between a State and Citizens of another State;--between

F.3d 244, 251 (5th Cir. 2015).  Constitutional limits on standing eliminate claims where the plaintiff has failed to make out a case or controversy between himself and the defendant.

To establish standing under Article III, a plaintiff, under well-established precedent, must show three things.  See e.g., *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167 (2000).     First, a plaintiff must show an "injury in fact" that is both "concrete and particularized," as well as "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife* , 504 U.S. 555, 560-61 (1992); see also *Lewis v. Knutson*, 699 F.2d 230, 236-37 (5th Cir. 1993). Secondly, the plaintiff must show "a causal connection between the injury and the conduct complained of -- the injury has to be fairly ... trace[able] to the challenged action of the defendant." *Id.* (alteration in original).  Thirdly, the plaintiff must show that the injury is likely, as opposed to merely speculative, that it will be redressed by a favorable decision. *Id.* at 561.

Defendants also argue that even if Plaintiff Aldridge has Article III standing, he must also have 'prudential' standing.  Here, Defendants cite the United States Supreme Court case of  *Elk Grove Unified School Dist. v. Newdow*.  There, the United States Supreme Court said, "our standing jurisprudence contains two strands: Article III standing. . .  and prudential standing, which embodies "judicially self-imposed limits on the exercise of federal jurisdiction," *Elk Grove Unified School Dist. v. Newdow.* 542 U.S. 1, 11 (2004) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984).

The Supreme Court, however, in *Lexmark International, Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 127 (2014), held that the "zone of interests" test no longer falls

---

Citizens of different States;--between Citizens of the same State claiming Lands under Grants of different States, and between a State, or the Citizens thereof, and foreign States, Citizens or Subjects.
U.S. Const. art. III, § 2, cl. 1

under the "prudential" rubric, abrogating *Elk Grove Unified School Dist. v. Newdow.* 542 U.S. 1, 11 (2004) as to this point.  The zone of interest analysis asks whether "this particular class of persons ha[s] a right to sue under this substantive statute." *Lexmark* at 127 (quoting *Association of Battery Recyclers, Inc. v. EPA*, 716 F.3d 667, 675–676 (2013) (concurring opinion).  The real inquiry then, is not whether Plaintiff here has prudential standing, but whether he falls within the appropriate 'zone of interest' under the Fraudulent Transfer Act.

The Supreme Court said in *Lexmark*, "[w]hether a plaintiff comes within the zone of interest is an issue that requires us to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark,* 572 U.S. 118, 127 (2014).  See *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 97, and n. 2 (1998); *Clarke v. Securities Industry Assn.,* 479 U.S. 388, 394–395 (1987); *Holmes v. Securities Investor Protection Corporation,* 503 U.S. 258, 265–268.  "Prudential standing' is a misnomer" as applied to the zone-of-interests analysis.  *Lexmark* at 127.

Also at issue is whether Aldridge states a claim for relief under the Mississippi Uniform Fraudulent Transfer Act, Miss. Code Ann. §15-3-107.

Defendants make three main arguments for dismissal of this lawsuit under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, all related to standing.  Defendants' three arguments are as follows:  1) intervention by the government in the FCA case robs the Relator of standing to pursue any subsequent action; 2) all of Defendants' liability was merged into the FCA judgment in favor of the United States and the judgment belongs only to the United States; and 3) the Fraudulent Transfer Act gives a right to sue under its provisions only to the United States and not to Aldridge as the Relator.

In reply, Aldridge makes two major arguments.  First, says Aldridge, he owns a vested statutory right to at least fifteen percent of the proceeds of the final judgment entered against Ted Cain and Julie Cain in the FCA lawsuit, giving him rights as a creditor under both the federal and state fraudulent transfer acts.  Secondly, as a *qui tam* Relator, he has the legal status of a partial assignee of the claims of the government, and of the judgment obtained.

### *Impact of the Government's Intervention on Standing*

Defendants' first treatment of the issue centers around the impact, on Aldridge's standing, of the government's intervention in the FCA *qui tam* litigation.  Because the United States intervened as Plaintiff in the FCA lawsuit, Defendants say the United States became the only judgment creditor.  In other words, they say, by intervening, the government took over in that case as Plaintiff, and "[o]nce [the United States] intervened, Aldridge's only right was to be consulted on settlement and be paid a share of proceeds if the same are collected." *Defendants' Motion to Dismiss* [doc. no. 24 p. 6].

The Complaint in *Aldridge v. CMI* seeks redress only for the United States Government, according to Defendants.  It does not seek individual redress for Aldridge; so, Defendants claim that Aldridge does not have standing under Article III or 'prudential' standing in this lawsuit. (This court has earlier addressed, however, that prudential standing is not the relevant test, but, rather, whether Plaintiff is within the appropriate "zone of interest" is the pertinent inquiry.)

In support of their contention, Defendants note that the  FCA provides that if the Government intervenes, the action shall, thereafter, be conducted by the Government. 31 U.S.C. §3730(b)(4)(A).  Although the Relator has some right to continue as a party in the FCA case, Defendants say, the Government has primary responsibility for prosecuting the action. *United States ex rel. Barajas v. Northrop Corporation*, 147 F.3d 905 (9th Cir. 1998) (citing *United States*

*ex rel. Eisenstein v. City of New York, New York,* 556 U.S. 928 (2009). See 31 U.S.C. § 3730(c)(1).  The statutory *qui tam* scheme, say Defendants, limits the Relator's role once the United States intervenes in the case; therefore, the intervention of the United States in the *Aldridge v. CMI* case divested Aldridge of any right to pursue his alleged interests in the case *sub judice.*

Defendants here understate the role of a Relator in a *qui tam* case under the FCA.  The FCA specifies that *qui tam* lawsuits are to be filed by Relators "***for the person*** (serving as relator) and for the United States Government." 31 U.S.C. § 3730(b)(1) (emphasis added). *Cochise Consultancy, Inc., v. United States ex rel. Hunt,* -- U.S. --, 139 S.Ct. 1507, 1514 (2019); *United States v. Eisenstein v. City of New York,* 556 U.S. 928, 930 (2009).

The very term "*qui tam*," means "who brings the action as well for the king ***as for himself***." *Riley v. St. Luke's Episcopal Hosp*., 196 F.3d 514 (1999) (emphasis added). See *Bass Anglers Sportsman's Soc'y of Am. v. U.S. Plywood–Champion Papers, Inc.,* 324 F. Supp. 302, 305 (S.D.Tex.1971).  Even where the Government pursues the action, the Relator "shall have the right to continue as a ***party*** to the action." 31 U.S.C. § 3730(c)(1) (emphasis added). See, e.g., *Cochise Consultancy,* at 1510.  After the government intervenes, the Relator not only remains a party, but the statute provides that he is entitled to participate in the litigation. 31 U.S.C. § *Vermont Agency of Natural Resources v. U.S. ex rel. Stevens* 529 U.S. 765, 769 (2000). Aldridge, through his attorneys, did, in fact participate in the FCA litigation against Ted Cain, Julie Cain and others.  At trial, Aldridge's counsel examined and cross-examined witnesses, submitted briefs, and presented oral arguments on motions and evidentiary issues.

In *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens,* the Supreme Court determined that a Relator has standing to bring suit in federal court on behalf of the United States under the

FCA, and meets the requirements to establish Article III standing in an FCA lawsuit. *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens,* 529 U.S. 765, 771(2000). The Supreme Court continued, in the *Vermont Agency* case, that the FCA statute "gives the Relator himself an interest ***in the lawsuit,*** and not merely the right to retain a fee out of the recovery." *Id.* at 772 (emphasis in original).

Defendants point out that in the *Vermont Agency* case, the United States had not intervened in the proceedings below. In that case, however, the Supreme Court did not make any distinction between the Relator's position if the government intervened or if the government did not intervene. And, as will be recalled, the FCA statute, itself, provides that even after intervention by the United States, the Relator has the right to continue ***as a party*** to the action. 31 U.S.C. §3730(c).

The extent of a Relator's interest in an FCA *qui tam* lawsuit is further demonstrated by the provision in the statute that the Relator is entitled to a hearing before the United States can voluntarily dismiss the suit, § 3730(c)(2)(A). The government is also prohibited from settling the suit over the Relator's objection without a judicial determination of fairness, adequacy and reasonableness. 31 U.S.C. § 3730(c)(2)(B).

Further clarifying the Relator's interest, the Court said in *Vermont Agency*, that a *qui tam* Relator is suing as a partial assignee of the United States. "Because the FCA can reasonably be regarded as effecting a partial assignment of the Government's damages claim, the United States' injury in fact suffices to confer standing on [the Relator]." *Vermont Agency* at 765-66.

If the Relator had standing in the *qui tam* case (as the Supreme Court said in *Vermont Agency* that he did), by virtue of his status as a partial assignee, it follows that he also has standing to proceed under the Fraudulent Transfer Act to preserve his ability to collect on the

judgment won in the *qui tam* case.  This court is not persuaded by the Defendants' argument that the United States' intervention in the FCA case robbed Aldridge of his standing to pursue this subsequent action under the Fraudulent Transfer Act.

### *Merger and Standing*

Defendants second argument is that all of their liability for alleged violations of the False Claims Act were merged into the judgment in favor of the United States, leaving no separate claims of the Relator.  Because the judgment is not his to enforce, Defendants say, Aldridge lacks standing to judicially attack Defendants' financial transactions.  Although Defendants allude to res judicata, they do not flesh out that argument, instead relying again on the argument that the FCA judgment belongs to the United States only, and therefore, Aldridge has failed to state a claim in this case upon which relief may be granted. In any event, res judicata would not apply, since the current cause of action is not the same cause of action as the FCA lawsuit.

Defendants' argument regarding merger of the judgment is essentially the same argument as was made concerning FCA intervention and standing – that any and all of Defendants' liability for alleged violations of the FCA were merged into the judgment in favor of the United States – and the only judgment creditor is the United States.  Defendants say that the FCA neither assigns the final judgment to Aldridge, nor empowers him to collect the United States' judgment.  As discussed in more detail later in this opinion, however, this court is persuaded that Aldridge is a partial assignee of the Government's claim, and that authorizes him to pursue this lawsuit under the Fraudulent Transfer Act.  See *Vermont Agency* at 765.  Defendants' arguments to the contrary are unavailing.

### *The State and Federal Fraudulent Transfer Acts and Standing*

Thirdly, Defendants argue that 28 U.S.C. §3304, the federal Fraudulent Transfer Act, does not convey standing to Aldridge as the Relator in the FCA case, since the Fraudulent Transfer Act applies only to debtors of the United States. Section 3304(b)(1) states: "a transfer made or obligation incurred by a debtor is fraudulent as to ***a debt to the United States***…". Defendants contend that the Relator status does not authorize Aldridge to act for the United States under the federal Fraudulent Transfer Act, 28 U.S.C. §3301 et seq, because that Act is specific to the United States as creditor, and Aldridge is not a creditor of any of the Defendants in the instant case.

Additionally, Defendants say Aldridge does not have a cause of action under the Mississippi Uniform Fraudulent Transfer Act, Miss. Code Ann. §15-3-101 et. seq., since the definitions of the terms "creditor" and "claim" are identical under the federal and state statutes. Neither Miss Code Ann. §15-3-101 nor the federal Fraudulent Transfer Act grant to Aldridge any cause of action, Defendants maintain.

This court disagrees. The federal Act defines the terms "claim" and "creditor" as follows:

> **(3)** "Claim" means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.

> **(4)** "Creditor" means a person who has a claim.

28 U.S.C. § 3301.

The Relator falls within the definition of a creditor in the Fraudulent Transfer Act, since he has a claim against these Defendants. A claim is very broadly defined in the Act, and the United States Supreme Court has told us, in *Vermont Agency*, that a Relator in a *qui tam* case

under the FCA is a partial assignee of the United States.  Under the terms of the statute, a claim does not even have to be reduced to a judgment, although in the instant case, it is. A claim may be liquidated or unliquidated, matured or unmatured.  It can even be a disputed claim.  This court is, thus, persuaded that Aldridge's interest in the judgment in the FCA case qualifies as a claim and Aldridge qualifies as a creditor under the federal statute.

The State of Mississippi's Uniform Fraudulent Transfer Act tracks the language of the federal statute exactly, in defining the terms "claim" and "creditor" as follows:

> (c) "Claim" means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.

> (d) Creditor means a person who has a claim.

Miss. Code Ann. § 15-3-101.

The Relator also falls within the definition of a creditor in the Mississippi Uniform Fraudulent Transfer Act, since he has a claim against certain of these Defendants.  Moreover, unlike the federal Act, the Mississippi statute does not limit the category of creditors who may avail themselves of its provisions; so, Defendants cannot claim that only the United States is authorized to bring a lawsuit under its provisions.

Defendants make an additional argument in support of their position.  The federal fraudulent transfer provisions (Title 28 §§ 3301 – 3308) are part of the Federal Debt Collection Procedures Act ("FDCPA") which establishes the exclusive means by which the United States shall address debts owed to it.  This, according to Defendants, is evidence that the entire FDCPA, including the fraudulent transfer provisions, is a remedy meant only for the United States, and it is not available to third parties.

Defendants cite *Cates v. Allen*, an 1893 United States Supreme Court case, in support of their position. That case is not pertinent to our inquiry.  That case is concerned with the use of courts of equity for the collection of debts rather than law courts, and it requires that some special reason be offered by the creditor to avail himself of the traditional court of equity instead of the usual court of law.  We are not here concerned with courts of equity versus courts of law. Additionally, *Cates* was concerned with common law collection of debts and was decided well before the enactment of either the state or federal statute at issue here.  28 U.S.C. §§ 3001-3008 was enacted in 1990.  Miss Code Ann §§15-2-101-108 became effective July 1, 2006.

### *The Relator Has a Vested Statutory Right to Proceeds of the FCA case*

Aldridge retorts that he has standing in this case, since, as Relator in the FCA action, he has a right, by statute, to a minimum of 15% of the Government's claims.  Title 31 §3730(d) provides that the Relator is entitled to between 15% and 25% of the recovery.  That right fully materializes, says Aldridge, once the Relator prevails in the litigation and a judgment is entered in the FCA lawsuit, as has been done in *Aldridge v. CMI*.

In *Aldridge v. CMI*, the *qui tam* Relator filed the FCA lawsuit in the first instance, then participated in the litigation and remained a party, even after the government intervened.  Those efforts resulted in a monetary judgment. It stands to reason that the Relator has standing to initiate an action to protect his right to collect on that judgment in the court where the judgment was entered.

Such was the case in the unreported Seventh Circuit case, *United States ex rel. McCandliss v. Sekendur.* 631 Fed. Appx. 447 (7th Cir. 2015).  The United States and the Relator had obtained a judgment, in an FCA case, against two brothers for defrauding the Social Security

Administration.  The United States learned that the brothers had placed funds in their retirement accounts; but, the brothers claimed that the retirement accounts were exempt from collection.

When the United States failed, for five years, to pursue garnishment of those funds, it was the Relator who sought, and was granted, a hearing to determine whether the retirement funds were exempt from collection.  The district court determined that they were not exempt, and the government was allowed to garnish 76% of the funds the brothers had placed in their retirement accounts.  The Seventh Circuit Court of Appeals upheld the district court's decision to allow the garnishment.  *United States ex rel. McCandliss v. Sekendur,* 631 Fed. Appx. 447 (7th Cir. 2015).

A *qui tam* Relator's right to a bounty may be regarded as an inchoate property right prior to judgment, see *Vermont Agency*, 529 U.S. 765, 773, Note 3 (2000), quoting 2 W. Blackstone, Commentaries *437, describing English *qui tam* actions and related rights.   After the Relator is successful in obtaining a judgment, however, the Relator has a "legally protected interest."  See *Vermont Agency* at 773; 31 U.S.C. § 3730(d)(1).  According to Aldridge, the fact that final judgment was entered in the FCA litigation before he filed this suit, is dispositive of Defendant's motion for dismissal.

As stated previously, there are three elements necessary to establish Article III standing, as pronounced by the United States Supreme Court, in *Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992): "(1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins,* 578 U.S. 330, 338 (2016) (citing *Lujan* at 560).

Once the judgment was entered in *Aldridge v. CMI,* Aldridge had a "concrete and particularized" interest in the Cains' payment of that final judgment, within the meaning of the standing requirements set forth in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

There is nothing "conjectural or hypothetical" about that statutory right or about his interest in the existing judgment.  Ted Cain and Julie Cain established the trusts at issue here in June of 2019, and, according to Aldridge, transferred the assets of over thirty of Ted Cain's businesses and properties into the trusts, aware that the FCA trial was set to begin in January of  2020.  This was done, says Aldridge, for the purpose of hindering the Cains' payment of the judgment that they anticipated would be rendered against them in the FCA case.

The Cains' actions in moving their assets into the subject trusts, pose an "actual or imminent" threat of an "injury in fact" to Aldridge's statutory right to receive the monies due to him from the judgment in the FCA proceeding.  This is an "actual or imminent" threat of an injury in fact that complies with the first *Lujan* requirement.

Additionally, that imminent threat to Aldridge's statutory right to at least 15% of the FCA judgment is traceable directly to the action by the Cains in transferring assets into trusts in order to make those assets unavailable to satisfy Aldridge's part of the judgment. Thus, the second element of Lujan -- a causal connection between the injury and the conduct complained of -- is also met.

The third *Lujan* requirement for standing is also met.  Voiding the transfers into the trusts and making those assets available to satisfy the judgment would likely redress the presently threatened economic injury to Aldridge's existing statutory right.

This court concludes that Aldridge has alleged sufficient facts to demonstrate the elements of standing and of a justiciable "case or controversy."  (This court does not here make any determination as to whether the transactions were, in fact, fraudulent. That will be left for the trial of this cause.)

Very few courts have addressed the issue of whether a successful *qui tam* Relator can bring an action under either the federal Fraudulent Transfer Act or under the Uniform Fraudulent Transfer Act adopted by most states, including Mississippi. The Fifth Circuit has not done so.

In *United States ex rel. v. Mortgage Investors Corp*., (a case with a long history and numerous court opinions along the way), the Court of Appeals for the Eleventh Circuit addressed the Relator's standing to assert a claim under Georgia's Uniform Voidable Transactions Act (formerly known as the Uniform Fraudulent Transfers Act).  See Ga. Code Ann. § 18-2-70, *et seq;.  United States ex rel. v. Mortgage Investors Corp*., 987 F.3d 1340, 1357 (11th Cir. 2021), *cert. denied sub nom*. *Mortgage Investors Corp. v. United States ex rel.  – U.S. --*, 141 S. Ct. 2632, 209 L. Ed. 2d 757 (2021).   Both sides in the case at bar have cited *Mortgage Investors Corp*., in support of their respective positions.  That appellate body reached a conclusion that, at first blush, seems opposite to that reached by this court, but ultimately shown to undergird this court's decision in this case.

The Georgia fraudulent transfer statute gives creditors the right to avoid fraudulent transfers and to obtain an injunction against the debtor to prevent further disposition of property. *United States ex rel. v. Mortgage Investors Corp*., 987 F.3d 1340, 1357 (11th Cir. 2021), *cert. denied sub nom*. *Mortgage Investors Corp. v. United States ex rel.  –* U.S. --, 141 S. Ct. 2632, 209 L. Ed. 2d 757 (2021).

In *Mortgage Investors,* the Relators, who were mortgage brokers, filed a *qui tam* action under the FCA against certain lenders, that the Relators alleged had defrauded the Veterans Administration.  The *qui tam* action was filed in 2006.  Beginning in late 2011, one defendant lender began distributing assets to its shareholders, largely to one person -- the majority

shareholder and Chairman of the Board.  After this distribution, the defendant lender was left insolvent.

The Relators amended their FCA Complaint to add a fraudulent transfer claim under Georgia state law against that lender and against the person who was the recipient of most of the assets (the majority shareholder and Chairman of the Board). The district court granted the Defendants' motion to dismiss the Relators' fraudulent transfer claim for lack of standing.  The Eleventh Circuit Court of Appeals affirmed that decision.

Unlike the issue facing this court, the issue before the Eleventh Circuit in *United States ex rel. v. Mortgage Investors Corp,* was whether the Relators could bring the fraudulent transfer action as part of the Relators' *qui tam* lawsuit.  Since the claim was brought during the pendency of the *qui tam* lawsuit, obviously a judgment had not yet been rendered in the Relators' favor. The Eleventh Circuit Court was considering the Relator's ***pre-judgment*** interest in preventing fraudulent transfers.

Because the Georgia fraudulent transfer statute, like that of Mississippi, applied to claims that were not yet reduced to judgment, the Relators said they had standing as pre-judgment creditors, to bring the lawsuit under that statute. The Eleventh Circuit disagreed.  Citing *Vermont Agency of Natural Resources v. Stevens*, the Eleventh Circuit determined that it is not the Relator's own injury that gives him standing to pursue an FCA *qui tam* action.  His standing arises from the partial assignment of the Government's claim to the Relator.  *U.S. ex rel. v. Mortgage Investors Corp.,* 987 F.3d 1340, 1357 (2021) (citing *Vermont Agency of Natural Resources v. Stevens*, 529 U.S. 765, 773 (2000).  The Eleventh Circuit determined that a Relator's ***pre-judgment*** interest in preventing a fraudulent transfer did not give rise to an Article III injury in fact.  *Mortgage Investors*, at 1344. (emphasis added).

24

In the current case, the Relator's interest is based on a claim reduced to a multi-million-dollar judgment.  The Supreme Court, in *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens,* acknowledged that once the litigation is over and the Relator prevails, the right he seeks to vindicate fully materializes.  The Supreme Court there stated,

> [T]he interest must consist of obtaining compensation for, or preventing, the violation of a legally protected right.  See *Lujan, supra*, at 560–561.  A qui tam relator has suffered no such invasion—indeed, the "right" he seeks to vindicate does not even fully materialize until the litigation is completed and the relator prevails.

*Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 772–73 (2000).

The Supreme Court went on to quote Black's Commentary as follows:

> Blackstone noted, with regard to English qui tam actions, that "no particular person, A or B, has any right, claim or demand, in or upon [the bounty], till after action brought," and that the bounty constituted an "inchoate imperfect degree of property ... [which] is not consummated till [sic] judgment." 2 W. Blackstone, Commentaries *437.

*Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 773(2000).

This court is persuaded that once the Relator's claim has materialized into a judgment, a fraudulent transfer is an injury that is concrete and particularized, as well as actual and imminent, not conjectural or hypothetical. The other elements of Article III standing are also met.

### *Status as Partial Assignee*

Even if Aldridge as the Relator, does not have standing in his own right because of his statutory right to share in the recovery, Aldridge says he has standing in this case because of his status as a partial assignee of the United States.  As the Court said in *Vermont Agency* "a *qui tam* Relator is, in effect, suing as a partial assignee of the United States." *Id.,* at 773-74.

This is the second basis for standing argued by Aldridge, and that which this court finds most persuasive -- that he, as Relator, has the legal status of a "partial assignee" of the claims of

the United States against Ted and Julie Cain and the other Defendants, and of the resulting judgment.

Therefore, Aldridge says, contrary to Defendants' assertions, he is a "creditor" as defined under the federal Fraudulent Transfer Act and under the state's Uniform Fraudulent Transfer Act.  Both 28 U.S.C. § 3301(4) and Mississippi Code Ann. §15-3-101(d) define a "creditor" as a "person who has a claim," and Aldridge as partial assignee, says he fits that definition.

A Ninth Circuit case, *United States ex rel. Kelly v. Boeing Co*., provides a helpful analysis of standing and assignees.  Federal courts, according to *Kelly v. Boeing,* "consistently recognize that an assignee of a fraud claim can assert his claim despite being unable to satisfy traditional standing requirements."  *United States ex rel. Kelly v. Boeing Co*., 9 F.3d 743, 748 (9th Cir. 1993)("Kelly"). (numerous citations omitted).

The *Kelly* court stated the following.

> Boeing and amici curiae argue that the only injuries implicated in *qui tam* suits are injuries to the federal treasury resulting from false claims against the United States. *Qui tam* relators do not suffer harm, and are therefore unable to establish the constitutional elements of standing. ...
> We disagree and hold that the FCA effectively assigns the government's claims to *qui tam* plaintiffs such as Kelly, who then may sue based upon an injury to the federal treasury. Under this theory of standing, the FCA's *qui tam* provisions operate as an enforceable unilateral contract. The terms and conditions of the contract are accepted by the relator upon filing suit.

*U.S. ex rel. Kelly v. Boeing Co*., 9 F.3d 743, 748 (9th Cir. 1993).

The *Kelly* Court continued: "Because the government clearly is capable of establishing injury-in-fact, causation, and redressability, *qui tam* plaintiffs satisfy these Article III requirements as well.  *Kelly* at 748.

Since the Relator's rights are established by the FCA statute upon filing of the *qui tam* lawsuit, the Relator's rights as assignee are not affected by the government's decision whether to

intervene in the case or not.   Aldridge, as a partial assignee of the government's claims has a "claim" and is a  "creditor" in his own right under both the Fraudulent Transfer provision of the Federal Debt Collection Procedures Act ("FDCPA") and Mississippi's Uniform Fraudulent Transfer Act. 28 U.S.C. §3301(4); Miss. Code Ann. §15-3-101(c).

Under basic assignment law, the assignee of a legal claim against a third party, becomes a 'judgment creditor' as to that third party once that claim is reduced to a judgment.  See e.g., *Salvex, Inc. v. Transfair N. Am. Int'l Freight Servs.,* 2020 U.S.Dist. LEXIS 144293 (S.D.Tex. 2020); and *Roberts v. Chimienti*, 2020 U.S.Dist. LEXIS 195459 (W.D.Tex. 2020). Aldridge, then, as partial assignee of the United States' claim against Ted Cain, Julie Cain, Stone County Hospital and CMI, is a judgment creditor as to the government's claim against them. The assignee is allowed to "step into the shoes" of the assignor and to collect judgment debts for his own benefit. See *Hartford Casualty Co. v. Cruse*, 938 F.2d 601 (5th Cir. 1991), and *Lloyd v. Bank of the South*, 796 So.2d 985 (Miss. 2001).

The Ninth Circuit, in *Kelly v. Boeing*, cited several courts and commentators that have embraced the above-described assignment theory to provide standing for Relators in FCA *qui tam* lawsuits.  See *United States ex rel. Kreindler & Kreindler v. United Technologies Corporation,* 985 F.2d 1148 (2d Cir. 1993), *cert. denied,* 508 U.S. 973 (1993); *United States Dept. of Housing and Urban Develop. ex rel. Givler v. Smith,* 775 F.Supp. 172, 180–81 (E.D.Pa.1991); *Truong v. Northrop Corporation,* 728 F.Supp. 615, 618–620 (C.D.Cal.1989); *Thomas R. Lee, Comment, The Standing of Qui Tam Relators Under the False Claims Act*, 57 U.Chi.L.Rev. 543, 563–70 (1990).

The court in *Kelly v. Boeing,* also noted that federal courts routinely find that fraud claims are assignable and cited numerous authorities.  See e.g.,  *AmeriFirst Bank v. Bomar*, 757

F.Supp. 1365, 1370–71 (S.D.Fla.1991) where the Court stated, "[a] party with standing to sue, however, generally has the power to assign his claim to one who would otherwise lack the requisite standing."  Standing is not  a requirement to bringing a claim which a plaintiff has been assigned. See e.g*., Spiller v. Atchison, T. & S.F. Ry. Co*., 253 U.S. 117, 40 S.Ct. 466, 64 L.Ed. 810 (1920) (court held that plaintiff who had been assigned claims under the Interstate Commerce Act could sue despite language in the Act that only "injured" persons had standing); *In re Fine Paper Litigation,* 632 F.2d 1081 (3rd Cir.1980) (court upheld the validity of a partial assignment of federal antitrust claims, stating such assignment does not circumvent the standing requirement of *Illinois Brick Co. v. Illinois,* 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977)).  *AmeriFirst Bank v. Bomar,* 757 F. Supp. 1365, 1370 (S.D. Fla. 1991) (10b–5 claims assignable); *Federal Deposit Ins. Corp. v. Main Hurdman*, 655 F.Supp. 259, 266–68 (E.D.Cal.1987) (bank's actions for fraud and malpractice assignable to FDIC); *In re National Mortg. Equity Corp*., 636 F.Supp. 1138, 1152–56 (C.D.Cal.1986) (RICO treble damage claims assignable).

In the event of a partial assignment, such as we have in the case *sub judice,* both the partial assignor [the United States] and the partial assignee [the Relator] retain an interest in the claim.  *Both* are real parties in interest.  The Supreme Court, in *U.S. ex rel. Eisenstein v. City of New York, New York,* said, "when there has been ... a partial assignment the assignor and the assignee each retain an interest in the claim and are both real parties in interest (citations omitted).  *U.S. ex rel. Eisenstein v. City of New York, New York,* 556 U.S. 928, 934 (2009) quoting 6A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure*, Sec. 1545, pp. 351-53 (2d ed. 1990).  But, where the United States has not intervened, the Court continued, "the United States' status as a "real party in interest" in a *qui tam* action does not automatically

convert it into a "party." *Eisenstein at 934.*  The FCA, though, specifies that even after intervention by the United States, the ***Relator*** remains a 'party.'  31 U.S.C. §3730(c)(1). The FDCPA, including its fraudulent transfer provisions, is not incompatible with the FCA provisions that make a partial assignment of the United States' rights to the Relator.

A Florida federal district court, in *United States v. Salus Rehab., LLC*, No. 8:11-CV-1303-T-23TBM 2018 WL 10162260 at *1 (M.D. Fla. Jan. 23, 2018), concluded that the state's Uniform Fraudulent Transfer Act is available to a Relator.  The United States and the State of Florida had won a multi-million- dollar verdict against the defendants in an FCA lawsuit, but that judgment had been vacated.  The Relator moved the court for an injunction pending appeal to prevent the defendants from conducting transactions outside the ordinary course of business until the appeal was decided.  The Relator claimed such an injunction was necessary to protect the interests of the Relator, the United States and the State of Florida, by preventing the defendants from transferring assets that might hinder the ability to collect on a future money judgment.

The federal district court for the Middle District of Florida declined to grant the injunction for several reasons, including the court's determination that "*[the Uniform Fraudulent Transfer Act] affords [the plaintiff] a legal remedy that gravitates strongly against the prospect of an irreparable injury."). United States vv. Salus Rehabilitation, LLC* at *1.
The court stated:

> The relator contends that the defendants might transfer assets to evade the now-vacated judgments, but the relator says nothing about the Uniform Fraudulent Transfer Act, a legal remedy that permits voiding a false or fraudulent transfer. See, e.g*., Regions Bank v. Kaplan*, 2017 WL 3446914 at *3 (M.D. Fla. Aug. 11, 2017) ("[The plaintiff] argues that the possibility that the defendants might transfer assets to hinder the ability of [the plaintiff] to collect a future money judgment warrants a preliminary injunction, but [the Uniform Fraudulent Transfer Act] affords [the plaintiff] a legal remedy that gravitates strongly against the prospect of an irreparable injury.").

*United States v. Salus Rehab., LLC*, No. 8:11-CV-1303-T-23TBM, 2018 WL 10162260, at *1
(M.D. Fla. Jan. 23, 2018).

It is a well-settled principle that injunctive relief is not available if the movant has an
adequate remedy at law.  See e.g., *Justin Indus., Inc. v. Choctaw Sec., L.P.*, 920 F.2d 262, 265
(5th Cir. 1990) (a prerequisite for the issuance of any injunction is failing to have an adequate
remedy at law). The district court in that case, clearly anticipated that the Uniform Fraudulent
Transfer Act would be available to the Relator to preserve or recover assets for purposes of
satisfying the judgment.

The Fifth Circuit has not yet grappled with this issue; however, at least one district court
within the Fifth Circuit has found that a Relator does have standing to pursue a Fraudulent
Transfer Act claim. In *United States v. Vista Hospice Care, Inc.,* No. 3:07-CV-0604-M, 2016
WL 1701840, at *4 (N.D. Tex. Apr. 28, 2016) an FCA case, the Relator contended that the
Defendant VistaCare entities had ceased to exist, and that the companies into which they had
been converted were being drained of assets due to fraudulent transfers.  Concerned that
VistaCare would not be able to satisfy a judgment, the Relator then sought to amend the
Complaint, for the fifth time, to add alter ego liability claims.  This was another example of a
*pre-judgment* effort.

The Relator's attempt to amend had been made very close to the trial date.  The court
concluded  that the amendment was not sufficiently important to justify its assertion at such a
late date, especially since the Relator, if she prevailed at trial, could pursue fraudulent transfer
claims.  The court there stated,

> Further, the Court knows of no reason why, if Relator prevails, it cannot later
> attempt to collect from Kindred as a successor-in-interest to the VistaCare entities
> and Gentiva, either through a suit or otherwise. Similarly, Relator's proposed
> ***fraudulent transfer claims*** rest on different allegations from those underlying her

30

existing claims, and she has not explained why she could not pursue such claims, to the extent they are valid, in a separate suit.

*United States v. Vista Hospice Care, Inc.,* No. 3:07-CV-0604-M, 2016 WL 1701840, at *4 (N.D. Tex. Apr. 28, 2016) (emphasis added).

The Texas federal district court, like the many other courts discussed above, anticipated that the Relator, if successful in the FCA litigation, would be able to pursue fraudulent transfer claims.

Aldridge is a creditor with at least a four million dollar claim against two or more of the defendants in the case *sub judice.* The United States Supreme Court has told us, in *Vermont Agency*, that a Relator in a *qui tam* case under the FCA is a partial assignee of the United States, so Aldridge's interest in the judgment in *Aldridge v. CMI* qualifies as a claim and Aldridge qualifies as a creditor under the state and federal Fraudulent Transfer Acts.

The United States Supreme Court, in *Vermont Agency,* stated, "precedent makes clear that an assignee can sue based on his assignor's injuries." *Id*. at 765. The Supreme Court reinforced this reasoning in *Sprint Communications Co., L.P. v. APCC Services, Inc.,* 554 U.S. 269 (2008). Citing *Vermont Agency*, the Court in *Sprint Communications,* acknowledged that there is a historical tradition of suits by assignees, including assignees for collection. "Indeed, in *Vermont Agency* we stated quite unequivocally that "the assignee of a claim has standing to assert the injury in fact suffered by the assignor." *Sprint Communications Co., L.P. v. APCC Services, Inc.,* 554 U.S. 269, 286 (2008) (quoting *Vermont Agency* at 773). See also *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 465 (1962); *Automatic Radio Mfg. Co. v. Hazeltine Research, Inc*., 339 U.S. 827, 829 (1950); *Hubbard v. Tod,* 171 U.S. 474, 475 (1898).

The United States Supreme court, in *Vermont Agency,* acknowledged that it has even entertained suits by subrogees, or "equitable assign[ees]." See, e.g., *Vimar Seguros y*

31

*Reaseguros, S.A. v. M/V Sky Reefer,* 515 U.S. 528, 531 (1995); *Musick, Peeler & Garrett v. Employers Ins. of Wausau,* 508 U.S. 286, 288(1993).

This court is persuaded that the Relator in the instant case may avail himself of both the federal Fraudulent Transfers Act and the Mississippi Fraudulent Transfers Act and has standing to bring this lawsuit.

### Historical Perspective on Relators' Interest

In deciding whether a *qui tam* Relator had standing to bring an FCA action, the United States Supreme Court, in *Vermont Agency,* reviewed the history of *qui tam* actions in England and the American Colonies.  The *qui tam* action seems to have originated around the 13th century in England, when private individuals who had suffered injury began to bring actions in the royal courts on both their own and the Crown's behalf.  See e.g., *Prior of Lewes v. De Holt* (1300), reprinted in 48 Selden Society 198 (1931) (as cited in *Vermont Agency* at 774-75).  Beginning in the 14th century, common-law *qui tam* actions fell into disuse, but Parliament began enacting statutes providing for *qui tam* lawsuits.  Some allowed injured parties to sue on behalf of their own interests as well as on behalf of the Crown. (citations omitted).  Other statutes allowed informers to obtain a portion of the penalty as a bounty for their information, even if they had not suffered an injury themselves. (citations omitted).

Although common law *qui tam* actions seem not to have been in existence in the Colonies, the First Congress created quite a few *qui tam* causes of action by statute.   See *Vermont Agency* at 774-75.  Some of them allowed the injured parties only to collect a bounty.  Others provided for both a bounty and an express cause of action.

Given the purpose of *qui tam* actions, and of the FCA, in particular, to curb fraud against the government, and the history of such actions as outlined by the Supreme Court, it only makes

sense that a Relator, authorized to bring suit on behalf of the government, and as a partial assignee, would have the right to protect and recover debtors' assets that should be made available to the creditors.   This is consistent with the public's interest in successfully enforcing the FCA and the Relator's private interests.  The interests of the government and the Relator are intertwined, rather than conflicting.  *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 760 (9th Cir. 1993).

This court is persuaded that Aldridge has Article III standing and that his interests fall within the zone of interests required to bring this lawsuit under the federal Fraudulent Transfer Act.   Aldridge also meets the definition of a creditor pursuant to the Mississippi Uniform Fraudulent Transfer Act, which defines creditor as "a person who has a claim." Miss. Code Ann. §15-3-101(d).  "Claim" is, in turn, defined by the state statute in language identical to the federal statute, as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Miss Code Ann. §15-3-101(c).   This Court, thus, has subject matter jurisdiction of this case. Accepting Plaintiff's allegations as true, for purposes of considering this motion, this court is persuaded, also, that the Complaint states a claim for relief.

## CONCLUSION

For all the reasons above stated, Defendants' Motion to Dismiss **[doc. no. 23]** is **denied.**

SO ORDERED AND ADJUDGED, this the 30th day of March, 2022.


s/ HENRY T. WINGATE
UNITED STATES DISTRICT JUDGE